UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL D. FERRELL,

        Plaintiff,

v.

TAYLOR BUILDING PRODUCTS,
INC. and TAYLOR ENTRANCE
SYSTEMS, INC.,

        Defendants.
_____/

Case No. 13-14915
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS AND ORDERING PLAINTIFF TO SHOW CAUSE**

    Daniel Ferrell believes that he was laid off by Taylor Building Products, Inc. (Taylor Building) and then not hired by Taylor Entrance Systems, Inc. (Taylor Entrance) because he suffered a heart attack in 2012 and is more than fifty years old. So he filed a lawsuit against Taylor Building and Taylor Entrance alleging claims under the Americans with Disabilities Act (ADA), Michigan's Persons With Disabilities Civil Rights Act (PWDCRA), and Michigan's Elliott Larsen Civil Rights Act (Elliott Larsen). *See* Pl.'s Am. Compl. ¶¶ 32–78, ECF No. 6.

    Taylor Building appears to be insolvent, no proof of service related to Taylor Building has been filed on the docket, and it has yet to answer or otherwise take action in the case. Taylor Entrance, on the other hand, filed a motion to dismiss Ferrell's claims on April 30, 2014. Based on what follows, that motion will be granted. Ferrell will be ordered to show cause why his claims against Taylor Building should not be dismissed for his failure to prosecute.

**I**

Ferrell was hired by Taylor Building in May 1986. Taylor Building was in the business of "manufacturing steel entry doors and sidelights for the residential and commercial new construction and replacement markets." Receiver's Mot. 1, *attached as* Def.'s Mot. Ex. A, ECF No. 10. For twenty five years after he was hired, Ferrell worked for Taylor Building without apparent incident. Then, on February 2, 2012, Ferrell suffered a heart attack. Fortunately, he was able to return to work in May of that year, and although originally unable to work more than eight-hour days, by July 2012 Ferrell was cleared to resume full work hours without restriction.

**A**

Like Ferrell, however, Taylor Building suffered a setback—but it did not recover. On October 12, 2012, Huntington National Bank (HNB) obtained a judgment against Taylor Building "on a revolving loan (which was secured by all the personal property assets of Taylor) in the amount of $2,137,272.78," plus interest from October 10, 2012, and some additional expenses. *Id*. at 2. HNB also maintained a first-priority mortgage lien on certain real property owned by Taylor Building, which secured a term loan HNB had previously extended. *Id*. at 3. As of October 10, 2012, Taylor Building owed HNB "the sum of $3,956,116.67 . . . on this term loan." *Id*.

During the litigation that resulted in HNB's judgment against Taylor Building, the United States District Court for the Southern District of Ohio appointed Bill Frazier—at HNB's request—as the "acting Receiver of the business and assets of Taylor Building Products, Inc." *Id*. at 1. After the entry of judgment in HNB's favor, Frazier concluded that it was in Taylor Building's best interest to sell the following assets over which it maintained control:

    a. All owned and leased, machinery, equipment, fixtures;

    b. Owned real estate;

    c. Inventories, intangibles, books and records;

    d. Prepaid expenses;

    e. Permits;

    f. And all other assets and rights of Taylor other than the Excluded Assets.

*Id*. at 3. Frazier suggested the district court "approve the bid of Wausau Supply Co. or its assignee or nominee" for the purchase of Taylor Building's assets. *Id*. at 4. On December 20, 2012, the district court approved Frazier's proposed Asset Purchase Agreement and authorized the transfer of Taylor Building's assets and real property to Wausau. *See* Order 5, *The Huntington Nat. Bank v. Taylor Building Prods., Inc.*, No. 12-937 (S.D. Ohio Dec. 20, 2012), *attached as* Def.'s Mot. Ex. E. In this order, the court expressly indicated that any preexisting claims against Taylor Building were foreclosed:

> [A]ll persons and entities . . . holding Interests of any kind or nature whatsoever against . . . Taylor . . . arising under or out of, in connection with, or in any way relating to . . . the operation of the Business prior to Closing Date . . . hereby are forever barred, estopped, and permanently enjoined from asserting against [Wausau], its successors or assigns, its property or the Assets, such persons' or entities' Interests.

*Id*. at 6.

The December 20, 2012 Order also made clear that the transfer of Taylor Building's assets to Wausau did "not amount to a consolidation, merger, or defacto merger" between the two entities, and that "there is no common identity between [Wausau] and Taylor," Wausau "is not a continuation of Taylor or its business," and Wausau "does not constitute a successor to Taylor or its business." *Id*. at 9. Moreover, "to the fullest extent permitted by law," Wausau and its assigns were "released from liability for any claims against Taylor or the Receiver or its

predecessor or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character . . . ." *Id*. at 11.

Approximately one month before the district court entered the December 20 Order, on November 28, 2012, Taylor Entrance was incorporated under the laws of the State of Wisconsin. *See* Articles of Incorp., *attached as* Def.'s Mot. Ex. F. The day after the district court entered its order approving the transfer of Taylor Building's assets to Wausau, on December 21, 2012, Wausau assigned its right to acquire "the assets under the Asset Purchase Agreement" as follows:

1. Taylor Real Estate, Inc.—all real estate subject to the Agreement

2. Taylor Entrance Systems, Inc.—all other assets subject to the Agreement.

Assignment Agreement, *attached as* Def.'s Mot. Ex. G. Thereafter, Taylor Entrance acquired Taylor Building's assets (other than property assets) pursuant to Wausau's rights.

**B**

In the beginning of October 2012, presumably after learning about the impending judgment, Taylor Building conducted informal meetings, run by Joe Izworski (Ferrell's Plant Supervisor), where Ferrell learned that Taylor Building was laying off all of its employees "because the business was being foreclosed and bought out by another company and/or bank." Pl.'s Am. Compl. ¶ 17. According to Ferrell, Taylor Building also represented that "*all* employees would be called back to work . . . following the layoff." *Id*. ¶ 18 (emphasis added). Although some workers were called back during the first week of November 2012, Ferrell alleges that "older workers (many with medical conditions or disabilities) were never called back" despite Taylor Building's "promise[] that all employees would return to work . . . ." *Id*. ¶ 21.

C

On January 29, 2013, Ferrell filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that "Taylor Building Products, Inc." had discriminated against him because of a disability. EEOC Charge, *attached as* Def.'s Mot. Ex. H. Notably, Ferrell's EEOC Charge of Discrimination did not name, or allege any misconduct on the part of, Taylor Entrance.

Ferrell subsequently filed a complaint against Taylor Building, Taylor Entrance, and Neumodx Molecular, Inc. (doing business as Taylor Entrance), alleging violations of the ADA, PWDCRA, and Elliott Larsen. He then amended his complaint on January 1, 2014, naming only Taylor Building and Taylor Entrance. Ferrell claims that "[a]s a result of [his] heart condition/heart attack and/or perceived limitation of [his] heart condition/heart attack on [his] employment with Defendants, [he] was laid off/terminated on or about October 12, 2013."[1] Pl.'s Am. Compl. ¶ 41. According to Ferrell, the "Defendants" then "failed to rehire [him]" because of his heart in violation of the ADA. *Id*. ¶ 42. Ferrell also claims that "Defendants" violated the PWDCRA by "laying off/terminating [him] and failing to rehire [him]" on account of his heart. *Id*. ¶ 57. Finally, Ferrell alleges that Taylor Building and Taylor Entrance also violated Michigan's Elliott Larsen Act by laying him off "and/or not rehir[ing] [him]" in a manner that "give[s] rise to an inference of age discrimination." *Id*. ¶¶ 73, 74.

Taylor Entrance filed a motion to dismiss Ferrell's claims, emphasizing the Southern District of Ohio's court order precluding successor liability between Wausau and its assigns (like Taylor Entrance) and Taylor Building. Taylor Entrance relies on the district court's order

---

[1] Although Ferrell's amended complaint alleges here that he was laid off or terminated on October 12, 2013, *see* Pl.'s Am. Compl. ¶ 41, this can only be a typographical error, as elsewhere he alleges that he was "laid off/terminated on or about October 12, 2012[,]" *id*. ¶ 19, that he "filed his EEOC Charge . . . on January 28, 2013," *id*. ¶ 33, and that he was "issued a right to sue letter . . . on or about August 28, 2013," *id*. ¶ 34.

because it appears from Ferrell's complaint that his allegations against Taylor Entrance stem from his termination by Taylor Building. Taylor Entrance asserts in its motion that Ferrell "also alleges that Defendant Taylor Entrance . . . bought out and/or merged with Taylor Building Products and is, therefore, liable for the supposed discrimination based on a theory of successor liability." Def.'s Mot. 1. Taylor Entrance contends, however, that "[t]he underlying district court's order precludes a finding of successorship at this late date." *Id*.

Taylor Entrance also argues that because Ferrell did not name it in his EEOC complaint, his claims have not been exhausted and should be dismissed for that reason. Finally, Taylor Entrance requests that the Court not assert supplemental jurisdiction over Ferrell's state law claims.

Ferrell responded by asserting that his claims against Taylor Entrance do not arise from successor liability at all, but instead from Taylor Entrance's own conduct: "This information that [Ferrell] received clearly points to *both* Defendants potentially having some involvement in [his] layoffs" and "Defendant Taylor Entrance was in fact involved with the . . . failure to hire[2] [Ferrell] back to Defendant's plant following his lay off/termination." Pl.'s Resp. 11, 12 (emphasis in original), ECF No. 13. Indeed, Ferrell suggests that Taylor Entrance's motion "almost entirely concern[s] allegations that Plaintiff has somehow alleged vicarious liability or successor liability . . . . In fact, Plaintiff's First Amended Complaint is completely void of any such references . . . ." *Id*. at 10.

---

[2] Ferrell indicates that he uses the term "rehire" in his amended complaint "as it relates to not being called back after being laid off" because he "was unclear as to the relationship between the Defendants at the time he became aware of the hiring after his layoff." Pl.'s Resp. 3 n.3. According to Ferrell, "[t]o the extent the Court is inclined to grant Defendant's motion based upon the fact that [he] used 'rehire'" instead of "hire" as it relates to Taylor Entrance, he should be able to "[a]mend his complaint to explicitly include 'rehire or hire' in regards to Defendant Taylor Entrance now that [he] more fully understands the relationship between defendants." *Id*.

As to Taylor Entrance's argument that Ferrell's failure to name it in his EEOC charge should preclude his claims, he argues that discovery would allow him "to discover whether or not Defendant Taylor Entrance did in fact have knowledge *at any point* and not just 'during the EEOC's administrative investigation'" in order to overcome his omission. *Id*. at 16. He also asserts that this Court has diversity jurisdiction over his state law claims, and that even if his ADA claim was dismissed, his state law claims should remain. *Id*. at 18–19.

## II

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Generally, however, a Rule 12(b)(6) motion to dismiss should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis in original) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)).

## III

Ferrell makes clear in his response that his claims against Taylor Entrance stem from its conduct independent of his employment relationship with Taylor Building; he alleges Taylor Entrance was involved with his layoff or termination, and that it violated his rights when it did

not later hire him. Because each of these theories of liability is without merit, Ferrell's claims against Taylor Entrance will be dismissed.

**A**

Ferrell's claim that Taylor Entrance was somehow involved with his layoff is directly contradicted by his own assertions and the undisputed factual evidence in the case. Ferrell makes clear that he was laid off or terminated "on or about October 12, 2012." Pl.'s Am. Compl. ¶ 8. But Taylor Entrance was not incorporated until November 28, 2012. *See* Articles of Incorp. Further, Ferrell has expressly conceded that his claims against Taylor Entrance do not involve successor liability or vicarious liability for Taylor Building's conduct. *See* Pl.'s Resp. 10 (indicating that Ferrell's "First Amended Complaint is completely void" of any allegations for "vicarious liability or successor liability"). So any claim against Taylor Entrance related to Ferrell's termination is clearly without merit; the company had yet to exist when his employment with Taylor Building came to an end.

**B**

Ferrell's claims against Taylor Entrance for the failure to hire him are similarly unjustified, whether those claims arise under the ADA, the PWDCRA, or Elliott Larsen.[3] This conclusion stems from the fact that Ferrell never applied for a position with Taylor Entrance.

The ADA precludes covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring . . . of employment." 42 U.S.C. § 12112(a). However, to state a claim under the ADA for failure to hire, a plaintiff must actually "apply for [the vacant] positions." *McGhee, II v. Technicolor Distribution Co.*, 238 F.3d 422, at *1 (6th

---

[3] Although Taylor Entrance suggests that the Court should not assert jurisdiction over Ferrell's state law claims, the Court maintains diversity jurisdiction over those claims even if Ferrell's ADA claim is dismissed, pursuant to 28 U.S.C. § 1332, because Taylor Building and Taylor Entrance are "Foreign Profit Corporation[s]," Ferrell is a resident of Michigan, and the amount in controversy exceeds $75,000. *See* Pl.'s Am. Compl. ¶¶ 1, 2, 3, 7.

Cir. 2000) (citing *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629 (6th Cir.1987)). So Ferrell's ADA failure-to-hire claim is without merit because he does not allege that he ever applied for a job with Taylor Entrance. In addition, the ADA and the PWDCRA "substantially mirror" each other, *see Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012), so "claims under both statutes are generally analyzed identically." *Steward v. New Chrysler*, 415 F. App'x 632, 641 (6th Cir. 2011). Thus, the logic supporting the dismissal of Ferrell's ADA claim also calls for the dismissal of his PWDCRA claim. Because Ferrell did not apply for any positions with Taylor Entrance, he cannot maintain a failure-to-hire claim against that entity.

Ferrell's Elliott Larsen claim for age discrimination is without merit, too. The Elliott Larsen Act precludes an employer from "fail[ing] or refus[ing] to hire . . . an individual with respect to employment . . . because of . . . age . . . ." Mich. Comp. Laws § 37.2202(1)(a). But just like the ADA and the PWDCRA, to support a claim for failure to hire under Elliott Larsen, a plaintiff must have actually applied for the position in question. *See Pinkston v. Accretive Health*, No. 09-10513, 2010 WL 187833, *12 (E.D. Mich. Jan. 15, 2010) (dismissing Elliott Larsen age-discrimination failure-to-hire claim because "Plaintiff did not apply for any open positions."); *Reason v. Seimens Energy & Automation, Inc.*, No. 89-72756, 1990 WL 369720, *4 (E.D. Mich. Aug. 7, 1990) (same).

At least under the ADA, there are two exceptions to the requirement that a plaintiff apply for a position before alleging a failure-to-hire claim. For example, a plaintiff may establish a failure-to-hire claim by demonstrating that even though he did not apply, "the employer was otherwise obligated to consider him." *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989) (collecting cases); *see also Owens v. Wellmont, Inc.*, 343 F. App'x 18, 24 (6th Cir. 2009) (requiring plaintiff, when presenting failure-to-hire claim, to show she "applied for the available

position or can establish that the employer was otherwise obligated to consider her"). Another exception arises when "an employer . . . create[s] an atmosphere in which employees understand that their applying for certain positions is fruitless . . . ." *Wanger*, 872 F.2d at 145 (citation omitted).

In the present case, however, Ferrell makes no effort to establish that a situation existed at Taylor Entrance which led him to believe applying for a position would be futile. Further, this exception has generally been applied in failure-to-promote cases, where a plaintiff was already employed by an employer that was openly hostile to a protected characteristic. The mere fact that Taylor Entrance may not have hired Ferrell and some other former employees who were above the age of fifty does not amount to creating an atmosphere of futility. *See id.*

Moreover, Ferrell emphasizes—quite consistently—that Taylor Entrance was not obligated to consider or hire any specific individuals: "Defendant Taylor Entrance clearly had responsibility over the employees after the Closing Date: *Upon Closing, [Taylor Entrance] shall have the right to employ or engage any of the employees as it may choose.*" Pl.'s Resp. 7 (emphasis in original). Accordingly, Taylor Entrance was not obligated to consider Ferrell for employment, and neither exception to the application requirement applies here. Because Ferrell did not apply for a position with Taylor Entrance, his failure-to-hire claims under the ADA, PWDCRA, and Elliott Larsen all fail for the same reason.[4]

---

[4] Notably, because Ferrell did not indicate that his claims against Taylor Entrance stemmed from its independent conduct until he filed his response, Taylor Entrance only raised the argument that Ferrell did not apply for a position in its May 29, 2014 reply brief. And because Ferrell did not move for a sur-reply, he has not responded to this argument (which proves dispositive of his claims). However, because any argument he could raise would be without merit—and because he never requested leave to do so—the Court will not grant Ferrell an opportunity to file a sur-reply.

**C**

Because Ferrell's claims against Taylor Entrance will be dismissed, all that will remain of the case are his claims against Taylor Building—a seemingly insolvent entity that has yet to answer or plead (or even accept service). So Ferrell will be ordered to show cause why his claims against Taylor Building should not be dismissed for the failure to serve or otherwise prosecute his claims against that Defendant.

**IV**

Accordingly, it is **ORDERED** that Taylor Entrance's motion to dismiss, ECF No. 10, is **GRANTED**.

It is further **ORDERED** that Ferrell's claims against Taylor Entrance are **DISMISSED** with prejudice.

It is further **ORDERED** that Ferrell is **DIRECTED** to show cause, in writing, why his claims against Taylor Building should not be dismissed for the failure to prosecute. This submission is due no later than **July 31, 2014**.

Dated: July 9, 2014                                                                 s/Thomas L. Ludington
                                                                                                  THOMAS L. LUDINGTON
                                                                                                  United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 9, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS